JIM DARLINGTON, ALIAS GARLINGTON, V. THE STATE.

No. 1740.   Decided March 22, 1899.

**1.   Charge of Court—Requested Instructions.**

Where a charge of court submitted all the law applicable to the facts of a case, and the reasonable doubt is applied to all the phases of the case, this is a literal compliance with the requirements of the law, and it is not error to refuse requested instructions embraced in the charge.

**2.   Murder in the Perpetration of Robbery of a Railroad Train—Charge.**

On a trial for murder, where the evidence conclusively shows that the killing was done by defendant and others acting with him, in an attempt to rob a railroad train; that all the parties engaged in the attempted robbery were armed, and in the effort to rob said train, deceased was killed; and such killing was the natural and probable consequence likely to result from said attempt of robbery, then defendant would be guilty of murder in the first degree; and it was not error for the court to so charge the jury.

**3.   Objection to Admission of Evidence—Practice on Appeal.**

Unless a bill of exceptions is reserved at the time to the admission of evidence, and is incorporated into the record on appeal, the matter will not be revised on appeal.

**4.   Murder in the Perpetration of Train Robbery—Evidence Sufficient.**

See opinion for a summary of the evidence which the court holds amply sufficient to support a verdict for murder in the first degree committed in the perpetration of robbery of a railroad train.

**5.   Same.**

All murder committed in the perpetration, or in the attempt at the perpetration, of robbery is murder in the first degree. Penal Code, art. 711.

6. **Evidence as to Letter Written by Defendant.**

On a trial for murder it was competent for the prosecution, as bearing upon the question of defendant's guilt, to prove by a witness that a day or so after the killing he looked over defendant's shoulder and saw that a letter he was writing was addressed to one of the parties shown to have been connected with him in the crime.

APPEAL from the District Court of Tarrant.    Tried below before Hon. W. D. HARRIS.

Appeal from a conviction for murder in the first degree; penalty, death.

The indictment charged appellant with the murder of Watson Whittaker, on the 21st of July, 1898, by shooting him with a gun and pistol.

The important facts proved on the trial are sufficiently stated in the opinion.

*J. S. Davis* and *Callicutt & Call,* for appellant.—The court erred in admitting in evidence over the objection of the defendant the testimony of the witness W. H. Little, to the effect that on Tuesday after the alleged killing of Watson Whitaker the defendant came into his barber shop in Waxahachie, Texas, and wrote a letter to someone, and that he, Little, looked over defendant's shoulder while he was writing, and saw that the letter was addressed on the inside to W. R. Petty, Fort Worth, Texas.

The best evidence of which the case from its nature is susceptible must be produced, or its absence satisfactorily accounted for.

The contents of a written instrument can not be proved by parol testimony unless such instrument has been lost, mislaid, or destroyed, or is in the hands of the adverse party who has, after notice, refused to produce it.    Hurst v. State, 40 S. W. Rep., 264; Chester v. State, 5 S. W. Rep., 125.

The court erred in refusing to give defendant's special requested instruction number 1.    [Copied in opinion—Reporter.]    The court should charge all the law applicable to any phase of the case raised by the evidence.    Jobe v. State, 1 Texas Crim. App., 186; Lister v. State, 3 Texas Crim. App., 17; Davis v. State, Id., 91; Liskosski v. State, 23 Texas Crim. App., 165.

An uncorroborated confession is insufficient proof of corpus delicti. High v. State, 10 S. W. Rep., 238; Harris v. State, 17 S. W. Rep., 1110; 12 S. W. Rep., 1102; Cole v. State, 26 S. W. Rep., 337; Jackson v. State, 29 Texas Crim. App., 458; Willard v. State, 27 Texas Crim. App., 386; Harris v. State, 28 Texas Crim. App., 308; Dunn v. State, 34 Texas Crim. Rep., 257.

*Robt. A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the first degree, and his punishment assessed at death; and from this judgment of the court he prosecutes this appeal.

We will consider appellant's assignments of error in the order in which they are stated in his amended motion for new trial:

Appellant's first assignment of error complains of the action of the court in refusing to give special charge number 1 requested by him, as follows: "The jury are charged that in prosecutions for murder it is always incumbent on the State to establish the corpus delicti clearly and satisfactorily. This corpus delicti consists of the death of the party alleged to be dead, and that the death was produced by the criminal act of someone other than the deceased, and was not the result of accident or natural causes; and an uncorroborated confession of a person charged with murder is not sufficient, of itself, to establish the corpus delicti. And in this case you are instructed that if you believe from the evidence, beyond a reasonable doubt, that the defendant admitted or confessed to W. R. Petty or to W. H. Little or to Rude Stephens, or to all of them, that Watson Whittaker was killed by a gunshot wound inflicted by Charles Ellis, yet unless you further believe from the evidence, beyond a reasonable doubt, that such admission or confession has been corroborated by other evidence, you can not consider such confession; and, in the absence of such corroborating evidence, you will discard such confession, if any was made, and acquit the defendant." The court's charge submitted every phase of the law, as we understand it, that was applicable to the facts of this case, and applied reasonable doubt to every phase and theory of the case; and we do not think the court erred in refusing to give the charge quoted above. Where the court submits all the law applicable to a case, and the reasonable doubt applied to all the phases of the case, this is a literal compliance with the requirements of the law.

Appellant's second assignment of error is that the court erred in its definition of murder, in that the court nowhere in his charge gives the definition of manslaughter, as a part of the definition of murder. And in his third assignment he complains that the court erred in failing to charge the jury of what degree of murder they should convict defendant. The fourth assignment is "that the court imperatively charged the jury to find the defendant guilty of murder in the first degree, if they believed him guilty, and to acquit if they should not find him guilty of murder in the first degree; that such charge was an unwarranted assumption by the court of the province of the jury to determine the degree of murder of which they should convict the defendant." We will consider these three assignments of error together: We unhesitatingly say that in this case the evidence discloses the fact that this killing was done in an effort to rob the train; that all the parties were armed at the time of the attempted perpetration of the robbery; that the killing occurred during said time. Now, then, if appellant, as stated by the court in his charge, unlawfully entered into an agreement to rob this train with these parties, and, in the course of the effort to rob the train, deceased was killed, and such killing was the natural and probable consequence likely to result from the attempt to commit the offense of robbery, then the defendant would be guilty of murder in the first degree. If he did not enter into a

conspiracy to rob the train, and did not participate in the same, or if the jury had a reasonable doubt of the same, he would not be guilty of any offense. In other words, the evidence in this case discloses a case of murder in the first degree, or else no offense at all. We do not believe there is any merit in either of the assignments above.

Appellant's fifth assignment of error complains of the action of the court in permitting the witness Norvelle, over the objections of appellant, to testify to acts and words of defendant while in jail and under arrest on this charge; no caution or warning having been given, according to law, prior to such words and acts testified about. We have carefully read the record in this case, and do not find any bill of exceptions supporting the assignment of error. It has been repeatedly held that we can not review the action of the court in the admission or rejection of evidence, unless a bill of exceptions is reserved at the time. This was not done in this instance.

Appellant's sixth assignment of error is "that the verdict of the jury is contrary to the evidence." The witness W. R. Petty, a self-confessed accomplice, details, in substance, the following state of facts: That appellant, George Moore, and Charley Ellis, and himself entered into an agreement to rob a train, and agreed to rob the Santa Fe train, southbound, arriving at Fort Worth on July 21, 1898. The attempted robbery occurred at night. Witness says that they went to the scene of the attempted robbery, in Tarrant County, about a couple of miles south of Saginaw, a little town in Tarrant County; that, after some parleying, defendant and Charley Ellis agreed to go up to Saginaw, get on the train there, climb over the tender, and get charge of the engine, and stop the train in a cut at the spot agreed upon; that these parties did go to Saginaw, get on the tender, and, when they got to where they had agreed to rob the train, said parties stopped the engine. And appellant stated to witness that Ellis had acted the fool, and shot the engineer and conductor; that, after the train stopped, the officers (whom witness had previously notified of the contemplated robbery) appeared on the scene, and began shooting and witness and the other robbers left the scene. Other witnesses testify that the body of the engineer, Joe Williams, and of the deceased, Watson Whittaker, the fireman, were found on opposite sides of the track, with bullets in them. Dr. Thompson, witness for State, testified that: "If the bullets entered the body of deceased, and went straight through him, the wounds would produce, and ought to produce, death. If the bullet entered from behind, and came out in front, the result would be the same. The heart is under those marks." Another witness had previously testified to the position in which the bullet entered the body, and upon that testimony the doctor's opinion is based. Dr. Bacon Saunders testified that a bullet entering the body of deceased at the point indicated by the witness who examined the body of the deceased would produce death. After the attempted robbery, defendant went to Waxahachie, and while there entered the barber shop of the witness W. H. Little. The witness Little stated: That, when he came in,

appellant said, "Hello, Jim," and witness also said "Hello." Witness asked, "Where are you from?" and appellant answered, "I am from over here," and asked witness if he had seen the "Kid" (meaning Charley Ellis). "But I did not know him by that name. I knew him by the name of Burrows. That is his name. I told him, 'No,' I had not seen him. I said, 'Have you?' And defendant said, 'No.' And he talked on awhile, and then said, 'Yes,' that he had seen him. I told defendant he was at Ardmore the last time I heard of him. Defendant picked up some papers, and asked me if I saw an account of that business,—that train robbery. I told him, 'No.' I did see it, but I did not tell defendant that I had seen it. I asked defendant what about it, and he told me that— He hung his head down, and did not say anything for a few minutes, and then said, 'We had hell up there the other night;' and he then said he and the Kid separated that night, and he had not seen him since. Defendant further asked witness if I could have a letter sent for him to my care, and I told him, 'Yes.' I watched the mail, and no mail came there for defendant at all. He just told me that they had a hold-up there at the other end, and he said to me that he and the Kid separated there, and he had not seen him since they got separated at the train robbery. Appellant said, 'We had hell last Thursday night,' and asked me if I had seen an account of the robbery, and I told him I had not; and that was all that he said about it. He did say, 'The Kid was pretty damn nervy.' That is just the words he told me." The accomplice, Petty, also testified that appellant worked for Mrs. Forgy at the restaurant, washing dishes there, and that appellant quit work there the evening before the robbery. Mrs. T. J. Forgy testified, corroborating the accomplice: That appellant did work for her, washing dishes. It was the day before the robbery that he quit her employ. Appellant occupied the room No. 4 in the house, and witness saw a couple of guns and a pistol in there, but could not say whether or not they were Winchesters. Could not say positively that was appellant's room, but thinks it was. "I did not see the guns again after I heard of the robbery, but I did see the guns there during the week that appellant stayed there." J. T. Forgy testified: "If the hold-up occurred on Thursday night, it was Wednesday night defendant quit. I know he quit working for us the night before the hold-up occurred." Appellant also made a confession to the witness R. W. Stephens. Witness asked appellant if he was in the robbery, and appellant said, "Yes." Witness then asked him if he did that shooting,—killing these people,—and he said, "No; Ellis did that." "Then I asked where he went after he left there, and he said he came on down. Said he was on the tender. He said that Ellis went over the tender first, Petty next, and he next." J. W. Minor, for the State, testified: That he lived in the Chickasaw Nation, ten miles north of Ardmore, and was engaged in farming. That he knew appellant. The last time he saw appellant was Tuesday night, about 8 o'clock, during the last of July. "We were just lying down. We lie down pretty early. When appellant

40th Crim. Reps.—22

first came to the house, he hallooed out at the fence, and asked if Charley was there; meaning Charley Ellis, I suppose, because they had both worked for me during last February or March. They picked cotton for me there late in the spring. I told him Charley was not there. He asked me if he had been there, and I told him, 'Yes.' Told him he came there Sunday night,—no, Saturday night, and left Sunday night. Appellant stayed there all night, and until the next morning about eight o'clock. I had a conversation with him before he left. I said to him, 'Jim, under the circumstances, Charley and you are acting a little mysterious to me. The circumstances make the neighbors and officers watch you. My neighbors have spoken to me about it. I do not want you to come about me any more. I am too old a man for men who have acted like Charley has to come around. I do not want to be accused of dirty things. I can not have a stopping place for any such men.' That was about the conversation which occurred at breakfast. He said something about train robbery,—had had such conversations while he was picking cotton,—but I did not think he meant what he said. He said something about how easy a matter it would be for me to hold up a train and make a little rise,—something of that sort." That witness supposed at the time he was joking or joshing; "don't know." There are other circumstances in the record going to corroborate the accomplice, but we do not see fit to review all of them. Suffice it to say that appellant's assignment of error is not well taken; and we believe that the facts amply support the verdict of the jury.

Appellant's seventh assignment of error is "that the verdict of the jury is contrary to the law, in that no death of deceased from the criminal agency of any person had been shown, other than by the uncorroborated statement of defendant, if at all." We can not agree to this contention. As stated above, the evidence shows that deceased was shot, outside of the testimony of the accomplice; and the doctors giving expert testimony show conclusively that the wounds, in all probability, would have produced the death of deceased, outside of any fault or other agency whatever.

There is no merit in appellant's eighth assignment of error. Appellant's ninth assignment of error complains of the failure of the court to charge on murder in the second degree. We can not agree to appellant's contention that the evidence in this case required a charge of murder in the second degree. Article 711, Penal Code, provides that all murder committed in the perpetration, or in the attempt at the perpetration, of robbery, is murder in the first degree.

Appellant's tenth, eleventh, twelfth, and thirteenth assignments of error complain of the action of the court in giving certain charges. We have carefully examined the court's charge, and do not think the same is susceptible to the criticism made by appellant in his assignments. We think the court properly presented all the law applicable to the facts of this case, and the contention of appellant in said assignments is without merit.

Appellant's last and fourteenth assignment of error complains of the action of the court in permitting W. H. Little to testify, over defendant's objection, that on Tuesday, after the alleged killing of Watson Whittaker, the defendant came into his barber shop, in Waxahachie, and wrote a letter to someone, and that he (Little) looked over defendant's shoulder while he was writing the letter, and saw that the letter was addressed to W. R. Petty, Fort Worth, Texas. The court, in explanation of the bill of exceptions in this regard, states "that the testimony showed that the defendant kept the letter, and there was no information as to what he did with it, and its contents were not testified about in any way by any witness." We think the witness could be permitted, under such circumstances, to testify to whom he thought the letter was addressed. Especially is this the case when the letter was kept by appellant himself. If the witness saw appellant write a letter to W. R. Petty shortly after the robbery was alleged to have been committed, or if he could testify to circumstances indicating that it was probably a letter to W. R. Petty, although a remote circumstance, still we think it was admissible on the general issue of the guilt of appellant.

We have carefully examined all of appellant's assignments of error, and are of opinion that the verdict of the jury is amply supported by the evidence in this case. The judgment is therefore in all things affirmed.

*Affirmed.*

DAVIDSON, Presiding Judge, absent.

[NOTE.—Appellant's motion for rehearing was overruled June 7, 1899, without a written opinion.—Reporter.]